JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-02517-RGK (AGRx) | Date | August 10, 2015 |
|---|---|---|---|
| Title | *NEWTON v. PARKER DRILLING MGMT. SERVS., INC., et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) Order re: Defendant's Motion for Judgment on the Pleadings, or alternatively, for Summary Judgment (DE 8)

### I.    INTRODUCTION

On February 17, 2015, Brian Newton ("Plaintiff") filed a putative class action against Parker Drilling Management Services, Ltd.[1] ("Defendant") in the Santa Barbara County Superior Court. On March 23, 2015, Plaintiff and the putative class filed a First Amended Complaint ("FAC") in state court asserting the following claims: (1) minimum wage violations; (2) pay stub violations; (3) unfair competition; (4) failure to timely pay final wages; (5) failure to provide lawful meal periods; (6) failure to pay overtime and double-time premium wages; and (7) civil penalties under the Private Attorneys General Act of 2004 (the "PAGA"). On April 6, 2015, Defendant removed the action to this Court on the basis of federal question jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331, *et seq.*

Presently before the Court is Defendant's Motion for Judgment on the Pleadings, or alternatively, for Summary Judgment. For the following reasons, the Court **GRANTS** the Motion.

### II.    FACTUAL BACKGROUND

Plaintiff alleges the following in his Complaint.

---

[1] Defendant was erroneously sued as Parker Drilling Management Services, Inc.

Defendant employed Plaintiff and the putative class, comprising over twenty-five persons, as hourly employees who worked on oil platforms in the off-shore waters in the Santa Barbara Channel. Defendant specifically employed Plaintiff from approximately January 25, 2013 to January 15, 2015. Plaintiff's shift typically lasted fourteen days during which time he could not reasonably leave the platform. However, Defendant only paid Plaintiff for twelve hours each day, which omitted the remaining twelve hours of the day that Plaintiff was present on the platform.

Plaintiff and the putative class allege the following claims under California law: (1) Defendant failed to pay the state-mandated minimum, overtime, double-time, and meal period premium wages for all hours worked, which constitutes an unfair business practice; (2) Defendant failed to provide adequate pay stubs because they do not contain all hours and wages earned or the correct name of Plaintiff's employer; and (3) upon termination, Defendant did not timely pay all wages earned or unpaid to Plaintiff and the putative class. Among other relief, Plaintiff and the putative class seek minimum, overtime, double-time, and meal period premium wages owed with prejudgment interest pursuant to Labor Code Sections 3288 and 3289, waiting-time penalties pursuant to Labor Code Section 203, and civil penalties pursuant to Labor Code Sections 2698, *et seq.*

### III. JUDICIAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c) is "functionally identical" to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The only significant difference is that a Rule 12(c) motion is properly brought "after the pleadings are closed—but early enough not to delay trial," whereas a 12(b)(6) motion must be filed before the answer. Fed. R. Civ. P. 12(b)-(c). In ruling on a Rule 12(c) motion, as with one under Rule 12(b)(6), a court must assume the allegations in the challenged complaint are true, and must construe the complaint in the light most favorable to the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal is appropriate "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008.)

When considering a Rule 12(c) motion for judgment on the pleadings, a court may consider facts that are subject to judicial notice. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999). If resolution of a Rule 12(c) motion requires consideration of facts extrinsic to the pleadings that are not judicially noticeable, a court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007).

To prevail on a summary judgment motion, the moving party must show that there is no genuine issue of material fact as to matters upon which it has the burden of proof at trial and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.* at 326. Upon such showing, a court may grant summary judgment on all or part of the claim. Fed. R. Civ. P. 56(a).

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

### IV.     DISCUSSION

#### A.     **Defendant's Motion for Judgment on the Pleadings**

Defendant argues that judgment on the pleadings in its favor is warranted for the following reasons: (1) the pleadings are closed; and (2) Plaintiff's claims are subject to OCSLA, which is exclusively governed by federal law unless "applicable and not inconsistent" state law is necessary to fill a "significant void or gap" in federal law. The Court agrees.

##### 1.     *The Pleadings are Closed*

Defendant argues that the pleadings are closed because Defendant has filed an Answer to the FAC and Plaintiff has exhausted his right to amend the Complaint once as a matter of course. The Court agrees.

The pleadings are closed for the purposes of a Rule 12(c) motion once a complaint and answer have been filed, assuming, as is the case here, that no counterclaim or cross-claim is made. *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). Here, Plaintiff's FAC and Defendant's Answer have been filed. As such, the Court finds that the pleadings are closed for purposes of the present Motion and that the timing of Defendant's Motion is proper.

##### 2.     *Plaintiff's Claims are Subject to OCSLA*

The parties agree that all of Plaintiff's claims arise out of oil platforms subject to OCSLA. The purpose of OCSLA is to define a body of law applicable to the seabed and subsoil of the "[O]uter Continental Shelf" and to the fixed structures erected thereon. *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969). The "[O]uter Continental Shelf" generally includes all submerged lands within the territorial waters of the United States lying more than three miles from the coast of a state. *Valladolid v. Pac. Operations Offshore*, 604 F.3d 1126, 1130 (9th Cir. 2010).

Pursuant to OCSLA Section 1333(a)(1), the law to be applied to the subsoil and seabed of the Outer Continental Shelf and to all artificial islands and installations connected to the seabed of the Outer Continental Shelf is exclusively federal. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479 (1981); *see* 43 U.S.C. § 1333(a)(1); *Chevron Oil Co. v. Huson*, 404 U.S. 97, 100 (1971). However, the law of an adjacent state may be adopted as the law of the United States to the extent that the state law is "applicable and not inconsistent" with the FLSA, regulations of the Secretary, or other federal laws. 43 U.S.C. § 1333(a)(2)(A); *see Union Oil Co. v. Oppen*, 501 F.2d 558, 560-61 (9th Cir. 1974). Such state law is only "applicable" to the extent that federal law, because of its limited function in a federal system and inadequacy to cope with the full range of potential legal problems, has a significant void or gap. *See Rodrigue*, 395 U.S. at 357; 43 U.S.C. § 1333(a)(2)(A). Therefore, under OCSLA, federal law governs and state law only applies to the extent it is necessary "to fill a significant void or gap" in federal law. *See Cont'l Oil Co. v. London Steam-Ship Owners' Mut. Ins. Ass'n*, 417 F.2d 1030, 1036 (5th Cir. 1969) ("[T]he deliberate choice of federal law . . . requires that 'applicable' be read in terms of necessity – necessity to fill a significant void or gap."); *Nations v. Morris*, 483 F.2d 577, 585 (5th Cir. 1973) ("*Rodrigue* means that there must exist a gap before state law can be applicable").

Here, there are no "significant voids or gaps" in the applicability of the governing federal law, the Fair Labor Standards Act of 1938 (the "FLSA"), to the actions of which Plaintiff complains. Thus, it is not necessary to apply the law of the "adjacent state," which is California. Based on this finding, Plaintiff's contention that the FLSA's Savings Clause permits state law to concurrently govern with federal law is inapposite because it disregards OCSLA's necessity standard. The Court will first address Plaintiff's Savings Clause argument and then will address each claim in turn.

      a.    *The FLSA's Savings Clause*

Plaintiff contends that the FLSA includes a Savings Clause that allows federal and state law to concurrently regulate wage-and-hour claims in order to provide greater protection for employees. The FLSA's Savings Clause provides in relevant part: "No provision of [the FLSA] excuse[s] noncompliance with any Federal or State law . . . establishing a minimum wage higher than the minimum wage established under [the FLSA] or a maximum workweek lower than the maximum workweek established under [the FLSA]." 29 U.S.C. § 218(a). The Ninth Circuit has interpreted this clause as evidence that Congress did not intend the FLSA to preempt state wage-and-hour law. *See, e.g.*, *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000); *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1425 (9th Cir. 1990).

While Plaintiff's contention may be true in the absence of another controlling statute governing the relationship between federal and state law, here there is such a statute – OCSLA, which requires that federal law exclusively governs unless the adoption of state law is necessary to fill a "significant void or gap" in federal law. OCSLA provides the governing standard here.

For his interpretation of the Savings Clause, Plaintiff relies on *Pacific Merchant Shipping Ass'n v. Aubry*, which held that the FLSA does not preempt California's overtime laws as applied to vessels in the Santa Barbara Channel. 918 F.2d at 1415. However, *Aubry* involved vessels that are not subject to OCSLA, and thus the court in *Aubry* did not interpret the FLSA under the OCSLA necessity standard. *See Aubry*, 918 F.2d at 1415. Therefore, *Aubry* does not control the Court's analysis here. *See Mersnick v. USProtect Corp.*, No. C-06-03993 RMW, 2006 WL 3734396, at *7 (N.D. Cal. Dec. 18, 2006) (holding that under OCSLA, "the standard for whether state law applies is necessarily more stringent [than general preemption principles] given the exclusivity of federal jurisdiction").

Furthermore, *Le Sassier v. Chevron USA, Inc.*, 776 F.2d 506 (5th Cir. 1985), is instructive on this point. Although *Le Sassier* did not involve the FLSA, it did involve the application of federal and state law claims under OCSLA and addressed the contention that federal law does not preempt state law. *See id.* at 509. The court in *Le Sassier* held that a state law claim could not be pursued because federal law had its own comprehensive provisions relating to the claim. *Id.* at 509 (holding that there was no "gap" in federal law, and thus no authority permitting state law, where Congress provided a specific statutory provision addressing the claim). Additionally, the court found that the Supreme Court decision in *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 724-25 (1980), holding that federal law does not preempt state law providing more generous benefits, was inapposite under OCLSA. *See Le Sassier*, 776 F.2d at 509. *Le Sassier* therefore demonstrates that ordinary preemption principles and the FLSA's Savings Clause do not govern disputes arising under OCSLA. Thus, Plaintiff's contention that the Savings Clause allows California law to govern concurrently with the FLSA fails.

      b.    *Necessity of State Law as to Each of Plaintiff's Claims*

Defendant argues that the FLSA is a comprehensive federal statute as to all of Plaintiff's claims, and thus California law is inapplicable. The Court agrees.

      (1)    *Minimum Wage, Overtime, and Double-time Violations*

Plaintiff's first and sixth claims are for minimum wage violations and failure to pay overtime and double-time premium wages under California Labor Code Sections 510, 1194, and 1197. (FAC ¶¶ 14, 59.) Sections 1194 and 1197 direct employers to compensate employees at the state-mandated minimum wage for all hours worked. Cal. Lab. Code §§ 1194, 1197. Section 510 provides that eight hours of labor constitutes a day's work and provides compensation rates for work in excess of eight- and twelve-hour workdays. Cal. Lab. Code § 510(a).

However, the "FLSA provides a comprehensive scheme providing for minimum wages and overtime pay." Ann K. Wooster, J.D., *Validity, Construction, and Application of Fair Labor Standards Act—Supreme Court Cases*, 196 A.L.R. Fed. 507, § 2[a] (2004); *see Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013) ("The FLSA establishes federal minimum-wage, maximum hour, and overtime guarantees."); 29 U.S.C. §§ 206-207. Additionally, the FLSA defines "hours worked" with regard to employees who are required to be on duty for twenty-four hours or more. 29 C.F.R. § 785.22. Thus, there is no "significant void or gap" in the FLSA's coverage of Plaintiff's first and sixth claims, and therefore California wage-and-hour law is inapplicable.

(2)     *Failure to Provide Lawful Meal Periods*

Plaintiff's fifth claim for failure to provide lawful meal periods arises under California Labor Code Sections 226.7 and 512. (FAC ¶ 49.) Section 512 provides that no employer shall employ any person for a work period of more than five hours without a meal period of not less than thirty minutes. Cal. Lab. Code § 512(a). Section 226.7 sets forth "the only compensation" for a violation of Section 512, *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007), and provides that "the employer shall pay the employee one additional hour of pay . . . for each work day that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(b).

While the FLSA does not mandate certain rest and meal periods, it does provide for when those periods must be compensated. *Cal. Dairies, Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1034 (E.D. Cal. 2009). Specifically, federal regulations implementing the FLSA require that an employer compensate an employee at his regular wage for any such meal periods that are not "bona fide" as defined by 29 C.F.R. § 785.19. *Cal. Dairies, Inc.*, 617 F. Supp. 2d at 1043-44; *see* 29 C.F.R. § 785.19 (defining bona fide meal periods as non-worktime periods during which an employee "must be completely relieved from duty for the purposes of eating regular meals"). Additionally, the FLSA requires that overtime wages be paid for all "hours worked," including non-bona fide meal periods, in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Moreover, the purpose behind both the California Labor Code and FLSA compensation provisions are identical, i.e., to ensure that employers provide their employees with meal and rest breaks. *See Cal. Dairies, Inc.*, 617 F. Supp. 2d at 1043.

For these reasons, the FLSA provides sufficient coverage of meal period requirements and there exists no "significant void or gap." *See id.* at 1044 (noting that even though the California Labor Code "meal and rest benefits are not identical to the FLSA, both provide some form of meal and rest benefits to be paid by, and which are entirely within the control of, the employer even if the amounts are calculated differently"). Thus, California law regarding meal periods is inapplicable.

(3)     *Unfair Competition*

Plaintiff's third claim for Unfair Competition in violation of California Business and Professions Code Sections 17200, *et seq.* (the "UCL") is based upon Defendant's failure to pay the state-mandated minimum, overtime, double-time, and meal period premium wages. (FAC ¶¶ 32-33.) The UCL prohibits acts of unfair competition, which include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. As discussed above, California law regarding wages, hours, and meal periods is inapplicable. It follows then that Plaintiff's UCL claim, predicated on the violations of that same law, also fails. *See Mersnick*, 2006 WL 3734396, at *10. Additionally, Section 216 of the FLSA provides penalties for an employer's violation of the minimum wage, maximum hours, overtime, and meal-time provisions. 29 U.S.C. § 216. For this additional reason, California law is not necessary to fill a "significant void or gap" in the FLSA. Thus, California unfair competition law is inapplicable.

(4)     *Pay Stub Violations*

Plaintiff's second claim for pay stub violations is premised on Defendant's failure to comply with Labor Code Section 226. (FAC ¶ 29.) Section 226(a) requires certain information – such as gross wages earned, total hours worked, net wages earned, and the employer's name and address – to be included on an employee's pay stubs. Cal. Lab. Code § 226(a). While the FLSA does not require employers to provide employees with pay stubs, it does require employers to keep accurate records of hours worked and wages paid to employees, among other information. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2; *Cal. Dairies*, Inc., 617 F. Supp. 2d at 1046. Because the FLSA prescribes record-keeping practices which must be maintained and penalties for failure to follow its requirements, the FLSA sufficiently covers Plaintiff's second claim, leaving no "significant void or gap." As such, California law regarding pay stub violations is inapplicable.

(5) *Failure to Pay Timely Wages*

Plaintiff's fourth claim for failure to timely pay final wages arises under Labor Code Sections 201 and 202. (FAC ¶ 40.) Section 201 provides that a terminated employee's wages earned and unpaid at the time of discharge are due and payable immediately upon termination. Section 202 requires that an employee's wages are due and payable within seventy-two hours after quitting his employment.

In comparison, the FLSA "'delineates administrative procedures by which covered worktime must be compensated' under federal law." *Mersnick*, 2006 WL 3734396, at *8 (quoting 5 C.F.R. § 551.101(a)). Specifically, the FLSA provides that an employer who fails to pay minimum wages and/or overtime wages is subject to a penalty equal to the amount of unpaid compensation. 29 U.S.C. § 216(b). Under the FLSA, wages are considered "unpaid unless they are paid on the employees' regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1538 (9th Cir. 1993), *cert. denied*, 510 U.S. 1081 (1994). The court in *Davis v. Maxima Integrated Products* extended the payment requirement in *Biggs* to terminated employees. *See* 57 F. Supp. 2d 1056, 1058 (D. Or. 1999) (holding that an employer's issuance of a terminated employee's final paycheck on the regularly scheduled payday, which happened to be several days after the employee left the job, comported with the FLSA).

Thus, the FLSA sufficiently addresses payment upon termination and there is no "significant void or gap." As such, California law regarding payment upon termination is inapplicable.

(6) *Civil Penalties*

Plaintiff's seventh claim for civil penalties arises under the Private Attorneys General Act of 2004 ("PAGA"), which allows aggrieved employees to recover state civil penalties for violations of the California Labor Code. Cal. Lab. Code § 2699(a). However, because, as discussed above, California law is inapplicable to Plaintiff's claims, there are no civil penalties for Plaintiff to collect under PAGA. Therefore, Plaintiff fails to state a claim upon which relief can be granted.

For the above reasons, California state law pertaining to Plaintiff's claims is not adopted as surrogate federal law under OCSLA. As such, Plaintiff's claims are exclusively governed by the FLSA. Because Plaintiff brought his claims under state law, the FAC "lacks a cognizable legal theory" and fails to state claims upon which relief can be granted. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Therefore, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings.

B.  **Defendant's Motion for Summary Judgment**

Since the Court grants Defendant's Motion for Judgment on the Pleadings, it is not necessary to address the merits of Defendant's alternative Motion for Summary Judgment.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings.

**IT IS SO ORDERED.**

_____ **:** _____

**Initials of Preparer**    _____